IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ISAAC DAVIS,                                    :

     Plaintiff,                              :

vs.                                            :        CA 15-0138-KD-C

DANIEL L. MCCARTHY, et al.,                     :

     Defendants.                             :

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b), on plaintiff's complaint (Doc. 1) and

motion to amend complaint (Docs. 21 & 24), defendant Melvin Jones' motion to dismiss

(Doc. 13; *see also* Doc. 14), the motion to dismiss filed by Lorenzo Matthews, III and

Daniel L. McCarthy (Doc. 17; *see also* Doc. 18), the motion to dismiss and incorporated

memorandum of law filed by the City of Mobile (Doc. 19), the defendants' objections to

plaintiff's motion to amend complaint (Docs. 26-28),  the plaintiff's responses in

opposition to the motions to dismiss (Docs. 31-33),[1] and the defendants' replies (Docs.

---

[1]     Plaintiff has also filed a notice of objection to defendants' Exhibits A & B. (*See* Doc. 30.) The exhibits to which plaintiff objects consist of documents contained in records retained and/or generated by the Municipal Court of Mobile County, Alabama or the Circuit Court of Mobile County, Alabama, and attached to the motion to dismiss filed by Daniel McCarthy and Lorenzo Matthews. (*Compare id. with* Doc. 18, Exhibits A & B.) Plaintiff objects to the state-court documents supplied by Matthews and McCarthy, claiming these documents are not relevant in this case. (*See* Doc. 30, at 1-4.) The undersigned **DISAGREES** with the plaintiff's assessment and **RECOMMENDS** that the Court overrule plaintiff's objections and take judicial notice of the relevant facts contained in those documents, as set forth in the findings of fact that follow. *Compare McDowell Bey v. Vega*, 588 Fed.Appx. 923, 926 (11th Cir. Oct. 17, 2014) (recognizing the propriety of the district court taking judicial notice of facts gleaned from state criminal docket sheets) *with* FED.R.EVID. 201(c)-(d) (allowing court to take judicial notice of a fact at any stage of the proceeding) and *Long v. Slaton,* 508 F.3d 576, 578 n.3 (11th Cir. 2007) (Continued)

34-37). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **GRANT** the defendants' motions to dismiss (Docs. 13, 17 & 19) and **DENY** the motion to amend (Doc. 24; *see also* Doc. 21) on the basis of futility.

## FINDINGS OF FACT

On the night of June 14, 2014, Isaac Davis was driving home and was stopped by a City of Mobile patrol car occupied by two police officers, Daniel McCarthy and Lorenzo Matthews. (Doc. 1, ¶¶ 9, 10 & 12.) McCarthy ran towards plaintiff's vehicle, "snatched" open the driver's side door, and ordered plaintiff out of his vehicle. (*Id.* at ¶ 13.)  The officers then—over plaintiff's objections—coerced him from his vehicle and began searching him[2] as they concomitantly handcuffed him. (Doc. 1, at ¶¶ 18-19.) According to plaintiff, the officers at no time requested his license, registration or proof of insurance; produced no search or arrest warrant; and did not inform him of his *Miranda* rights or that he was under arrest. (*Id.* at ¶¶ 14-16.)[3] Curiously, however,

---

("Although we rely on the ordinary meaning of the term 'cruiser' as a marked police patrol vehicle, this fact (which no one has disputed) is directly supported by an investigative report from the Alabama Bureau of Investigation, which Plaintiffs submitted to the district court as an attachment to Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss. The report indicates that the vehicle was a marked sheriff's cruiser complete with county tags, a flashing light bar on the roof, two police radios, and other emergency equipment. At the 12(b)(6) stage, we 'primarily consider the allegations in the complaint,' but '[t]he court is not [always] limited to the four corners of the complaint.' . . . Because Plaintiffs submitted the investigative report in opposing Defendants' motion to dismiss and because the document's authenticity and veracity are in this case unchallenged, we look to the report to confirm that the ordinary meaning of 'cruiser' applies as an undisputed fact for Deputy Stanton's sheriff's cruiser."), *cert. denied,* 555 U.S. 1069, 129 S.Ct. 725, 172 L.Ed.2d 725 (2008).

[2]     While set forth in his paragraph setting forth his state-law claims, Davis alleges that during the search of his person McCarthy and Matthews initiated "unwanted homosexual offensive bodily contact" by touching his buttocks and groin area. (*Compare* Doc. 1, at ¶ 40 *with* Doc. 24, Exhibit 2, at ¶ 55.)

[3]     At some point during the stop and arrest, defendant Melvin Jones arrived on the scene and "made no attempt to deter his subordinates from the unlawful arrest & trespass against plaintiff." (*Id.* at ¶ 20.)

plaintiff admits (and the officers fully appreciated) that he had "**NO** identification on his person[] & refused to give his name without cause until he was **THREATENED** by Matthews." (*Id.* at ¶ 21 (emphasis in original).) Moreover, despite Davis' allegation that the officers never informed him he was under arrest (*id.* at ¶ 16), he certainly perceived that he was under arrest because he was in handcuffs, placed in the patrol car and "repeatedly demanded to be taken before a neutral judge or magistrate to know the nature & cause of his arrest." (*Id.* at ¶ 22.) While the officers did drive by the magistrate's office, according to plaintiff, only McCarthy got out of the police vehicle and entered the office; Matthews continued to drive plaintiff to the Mobile County Metro Jail, where he was booked. (*See id.* at ¶ 23.) Davis was ultimately released from prison on June 16, 2014. (*Id.* at ¶ 25.)

Although these are the only readily discernable "facts" from plaintiff's initial complaint (Doc. 1), plaintiff attached to his complaint an affidavit which elucidates the circumstances of his arrest on the night of June 14, 2014—most of which have been incorporated in plaintiff's proposed amended complaint (*see* Doc. 24, Exhibit 2, at ¶¶ 13-15 & 29-31)—and, therefore, the undersigned sets forth these facts as if plaintiff had articulated them in his original complaint, particularly since plaintiff's affidavit (along with other attached exhibits) is referenced in the complaint (*see* Doc. 1, at 4 & 5).

> 4.     That affiant saw & heard McCarthy run toward his private automobile, snatch affiant's door open & say "GET THE FUCK OUT OF THE CAR!"
>
> 5.     That affiant then replied, "For what?"
>
> 6.     Affiant then saw & heard McCarthy yell, "MAN, GET YOUR ASS OUT OF THE CAR! YOU'RE GOING TO JAIL!"
>
> 7.     Affiant then saw & felt Matthews pull affiant's left shoulder.
>
> 8.     Affiant then sees McCarthy & Matthews search his person.

9.      Affiant then sees McCarthy & Matthews handcuff him.

10.     Affiant neither had identification in his private automobile nor on his person.

11.     Affiant then saw & heard Matthews say to affiant "If you don't give me your name, I'm going to tow your car."

12.     Affiant was then placed in the back seat of the police vehicle.

13.     Affiant then saw & heard Jones say to affiant "when an officer tells you to get out of the car, you get out!"

14.     That after affiant was arrested the police vehicle remained stationed on Ann Street for at least forty minutes **ALTHOUGH** affiant repeatedly demanded to be taken before a neutral judge or magistrate.

15.     Affiant then saw & heard McCarthy crank the police vehicle & drive it to the magistrate office located on 120 Palmetto Street Mobile, Alabama 36603.

16.     Affiant then upon arriving at the magistrate's office saw & heard McCarthy say "Here's the magistrate's office."

17.     Affiant then replied "Ok, take me inside!"

18.     Affiant then saw & heard McCarthy say "No!" then started laughing.

(Doc. 1, Affidavit of Isaac Davis in Support of Complaint, at ¶¶ 4-18.)

The only other discernable facts contained in plaintiff's proposed amendment, which are not set forth in the original complaint and attached affidavit, are that when Davis saw Jones on the scene observing his arrest, he asked Matthews "'Why are y'all doing this to me, what did I do?'" (Doc. 24, Exhibit 2, ¶ 24; *see also id.* at ¶ 23.) According to plaintiff, Matthews' response consisted of the following: "'because you don't have a tag light!'"[4] (*Id.* at ¶ 25.)[5] As set forth in the attachments to the motion to dismiss filed

---

[4]      Plaintiff also states he sent the City of Mobile three notices over a ninety-day period regarding the officers' misconduct and received no response from the City. (*See id.* at ¶¶ 36-37.)

by McCarthy and Matthews, Davis received a citation on June 14, 2014 for violating § 32-5-240(c)[6] of the Alabama Code by having no (or an impaired) tag light. (Doc. 18, Exhibit B.)

In addition to the foregoing, it is clear that Davis was arrested on June 14, 2014, and booked into the Mobile Metro Jail, on charges of failing to obey a police order, resisting arrest, and disorderly conduct (Doc. 18, Exhibit A, at 11)—complaints on the foregoing charges were sworn out against Davis by Officer Matthews on June 15, 2014, as witnessed by a magistrate (*id.* at 6, 8 & 10)—charges to which plaintiff entered guilty pleas on June 16, 2014[7] before a Municipal Court Judge and was ordered to pay costs and fines totaling some $848.00 (*see id.* at 5, 7, 9, 15-17 & 21).[8]

Davis claims that McCarthy and Matthews violated his Fourth, Fifth and Fourteenth Amendment rights by unlawfully seizing/arresting, searching and imprisoning his person in absence of probable cause and an immediate probable cause hearing and in utilizing excessive force in accomplishing his arrest. (*Compare* Doc. 1, ¶¶

---

[5]    As explained, *infra,* because these additional facts do not change the contents of this report and recommendation, any amendment by Davis would be futile and, accordingly, it should be **DISALLOWED**.

[6]    "Every motor vehicle shall have a tail lamp or a separate lamp so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted." ALA. CODE § 32-5-240(c)(3).

[7]    At the time of the entry of his guilty pleas, Davis waived his right to the assistance of counsel. (*Id.* at 12-14.) Some two weeks later, on July 1, 2014, Davis filed a motion to withdraw his guilty pleas; however, Municipal Judge Carol Little denied the motion to withdraw on July 11, 2014. (*See id.* at 31-32.)

[8]    Davis was initially ordered to pay all costs and fines by July 23, 2014 (*see id.* at 5, 7, 9 & 21); however, on July 31, 2014, Davis was ordered "to pay his fines and court costs at the rate of $30 per month, commencing September 1, 2014." (*Id.* at 27.)

39 & 42 *with* Doc. 24, Exhibit 2, at ¶¶ 54 & 57.) In addition, plaintiff has asserted state

law claims against the arresting officers for trespass, assault and battery, false arrest,

and false imprisonment.  (*Compare* Doc. 1, ¶ 40 *with* Doc. 24, Exhibit 2, ¶ 55.) As for

Sergeant Melvin Jones, plaintiff asserts a 42 U.S.C. § 1983 supervisory liability claim.

(*Compare* Doc. 1, ¶ 41 *with* Doc. 24, Exhibit 2, at ¶ 56.) Finally, Davis asserts a § 1983

claim against the City of Mobile based upon its maintenance of a policy or custom of

failing to properly train, supervise, control or correct the unlawful use of authority and

excessive force by its police officers (as claimed above) and/or its ratification of such

unlawful conduct. (*Compare* Doc. 1, ¶ 43 *with* Doc. 24, Exhibit 2, at ¶ 58.)

## CONCLUSIONS OF LAW

### A.    Motion to Amend.

Plaintiff has sought leave of court to file an amended complaint (Doc. 24; *see* Doc.

21 (proposed amended not attached to plaintiff's original request)), to which all of the

named defendants have interposed objection (*see* Docs. 26-28).

While there can be little question but that leave to amend under Rule 15 should

be given "when justice so requires[,]" FED.R.CIV.P. 15(a)(2), it is just as axiomatic that

leave to amend under Rule 15 "is not automatic." *Girard v. Aztec RV Resort, Inc.*, 2011

WL 7962612, *5 (S.D. Fla. Oct. 4, 2011)  (citations omitted).  As this Court has noted,

> [t]he law of this Circuit is clear that "a district court may properly deny
> leave to amend the complaint under Rule 15(a) when such amendment
> would be futile." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263
> (11th Cir. 2004); *see also Williams v. Board of Regents of University System of
> Georgia*, 477 F.3d 1282, 1292 n.6 (11th Cir. 2007) (same). "When a district
> court denies the plaintiff leave to amend a complaint due to futility, the
> court is making the legal conclusion that the complaint, as amended,
> would necessarily fail."  *St. Charles Foods, Inc. v. America's Favorite Chicken
> Co.*, 198 F.3d 815, 822-23 (11th Cir.1999). The futility threshold is akin to
> that for a motion to dismiss; thus, if the amended complaint could not
> survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to
> amend is properly denied. *See, e.g., Burger King Corp. v. Weaver*, 169 F.3d
> 1310, 1320 (11th Cir. 1999) (denial of leave to amend justified by futility

>when "complaint as amended is still subject to dismissal"); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment is futile if cause of action asserted therein could not withstand motion to dismiss); *Amick v. BM & KM, Inc.*, 275 F.Supp.2d 1378, 1381 (N.D. Ga. 2003) ("In the Eleventh Circuit, a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss.").

*Bill Salter Advertising, Inc. v. City of Brewton*, Ala., 2007 WL 2409819, *2 (S.D. Ala. Aug. 23, 2007); *see also Hearn v. International Business Machines,* 588 Fed.Appx. 954, 958 (11th Cir. 954, 958 (11th Cir. Oct. 23, 2014)[9] ("Though a party ordinarily must be given at least one opportunity to amend [his] complaint, the district court 'need not "allow an amendment . . . where amendment would be futile."' . . . A proposed amendment is futile 'when the complaint as amended would still be properly dismissed.'"); *Christman v. Walsh*, 416 Fed.Appx. 841, 844 (11th Cir. Mar. 2, 2011) (per curiam) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."), *cert. denied,* ___ U.S. ___, 132 S.Ct. 319, 181 L.Ed.2d 197 (2011). As explained more fully, *infra,* the factual allegations against the named defendants in the proposed amended complaint, affixed to the motion for leave (Doc. 24-2), and delineated hereinabove, would not survive a challenge under Rule 12(b)(6); therefore, the undersigned **RECOMMENDS** that the *pro se* plaintiff's motion for leave to file amended complaint (Doc. 24; *see also* Doc. 21) be **DENIED as futile**.

**B.**     **Motion to Dismiss Standard**.

---

[9]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 & 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678, 129 S.Ct. at 1949, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim that has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id*. at 678-679, 129 S.Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id*. 680, 129 S.Ct. at 1951 (a plaintiff must nudge his claims "'across the line from conceivable to plausible.'"); *see Speaker v. U.S. Dep't of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to belief above the speculative level.'"); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in [p]laintiff's favor, but we are not required to draw plaintiff's inference. Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. A complaint may be

dismissed if the facts as pled do not state a claim for relief that is plausible on its face." (internal citations and quotation marks omitted)), *abrogated on other grounds as stated in Mohamad v. Palestinian Auth.*, ___ U.S. ___, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).

    **C.**    <u>The Defense of Qualified Immunity as it Relates to Plaintiff's Fourth, Fifth and Fourteenth Amendment Claims[10] Asserted Against McCarthy and Matthews</u>. McCarthy and Matthews contend that they are entitled to qualified immunity on the individual capacity[11] claims asserted by Davis, it being undisputed that they were acting within the line and scope of their authority (*compare* Doc. 1, ¶¶ 5 & 6 (alleging McCarthy was a police officer acting in that capacity on the date in question and that Matthews was a police corporal acting in such capacity on the date in question) *with* Doc. 24, Exhibit 2, at ¶¶ 5 & 6 (same)),[12] and it being their contention that they did not violate any clearly established rights of the plaintiff (*see, e.g.,* Doc. 18, at 8-11).

---

[10]    As explained in more detail, *infra,* ns. 16 & 21, plaintiff's Fifth and Fourteenth Amendment "claims" against McCarthy and Matthews simply amount to another Fourth Amendment claim. *See McLaughlin, infra.*

[11]    Davis has also sued McCarthy and Matthews, as well as defendant Melvin Jones, in their official capacities (*compare* Doc. 1, at ¶¶ 5-7 *with* Doc. 24, Exhibit 2, ¶¶ 5-7), while at the same time suing the City of Mobile (*compare* Doc. 1, at ¶ 8 *with* Doc. 24, Exhibit 2, at ¶ 8). Because "[t]here is no longer a need to bring official-capacity actions against local government officials," *Kentucky v. Graham,* 473 U.S. 159, 167 n.14, 105 S.Ct. 3099, 3106 n.14, 87 L.Ed.2d 114 (1985), since such suits, "in all respects other respects other than name, [are] to be treated as a suit against the entity[,]" *id.* at 166, 105 S.Ct. at 3105 (citation omitted), and Davis has named the City of Mobile as a defendant (*see, e.g.,* Doc. 1, ¶ 8) in this action, the official-capacity claims asserted against McCarthy, Matthews, and Jones are redundant to the claims asserted against the City of Mobile and, therefore, should be **DISMISSED**, *see Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991).

[12]    To the extent plaintiff's complaint fails to adequately "admit" that McCarthy and Matthews were acting within the scope of their discretionary authority when the alleged wrongful acts occurred, it is clear that "'discretionary authority' includes all actions of a government official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority[,]'" *Griswold v. Alabama Dep't of Industrial Relations,* 903 F.Supp. 1492, 1498 (M.D. Ala. 1995) (citations omitted), and there can be little question but that making traffic stops and arrests fall within the official responsibilities of a police officer, *compare Burnett v. Unified Government of Athens-Clarke County, Georgia,* 395 Fed.Appx. 567, 568 (Continued)

Some thirty-three years ago in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Moreover, some three years later the Supreme Court reiterated in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* at 526, 105 S.Ct. at 2815, citing *Harlow, supra,* 457 U.S. at 818, 102 S.Ct. at 2738; *see also Gonzalez v. Reno,* 325 F.3d 1228, 1233 (11th Cir. 2003) ("It is [] appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'").

As indicated above, there is no question but that McCarthy and Matthews were at all times relevant hereto acting within their discretionary authority, and, therefore, the undersigned turns to plaintiff's complaint, and proposed amended complaint, to determine whether McCarthy and Matthews "committed a constitutional violation and [] [whether] the constitutional right the defendant violated was 'clearly established' at the time he did it." *Christman v. Pietrzak, supra,* 296 Fed.Appx. at 786, quoting *Crosby v.*

---

(11th Cir. 2010) ("The official responsibilities of a police officer on patrol including making traffic stops and arresting people who are suspected of committing traffic violations.") *with Christman v. Pietrzak,* 296 Fed.Appx. 783, 786 (11th Cir. 2008) ("Making an arrest is clearly within the official responsibilities of a police officer."). Given that plaintiff's claims against McCarthy and Matthews stem from their stop of his vehicle and subsequent arrest of his person, it is clear that these defendants were acting within the scope of their discretionary authority when the alleged violations occurred.

*Monroe County,* 394 F.3d 1328, 1332 (11th Cir. 2004). The undersigned now focuses on the federal claims asserted by Davis against McCarthy and Matthews.

**Unlawful Arrest/Seizure, Search and Imprisonment in Absence of Probable Cause and a Probable Cause Hearing.** Plaintiff's principal claim in this matter is that he was falsely arrested/seized, searched, and imprisoned absent probable cause or an immediate probable cause hearing. The Fourth Amendment, of course, recognizes the right of all individuals, like Davis, to be free from "unreasonable searches and seizures[.]" U.S. Const. amend. IV.[13] The undersigned recommends that the Court find that dispositive of the issue of whether Davis has established a constitutional violation by McCarthy and Matthews of his Fourth Amendment rights is whether his factual allegations establish that these officers lacked "'arguable probable cause for an arrest[.]'" *Christman, supra,* 296 Fed.Appx. at 786; *cf. id.* ("The district court correctly characterizes 'arguable probable cause' as dispositive to questions of both Pietrzak's claim of qualified immunity and Christman's Fourth Amendment rights. . . . It is well established in our circuit that when there is 'arguable probable cause for an arrest,' 'qualified immunity applies' 'even if actual probable cause did not exist.'").[14] Properly

---

[13]    "In Fourth Amendment terminology, an arrest is a seizure of the person[.]" *Skop v. City of Atlanta, Georgia,* 485 F.3d 1130, 1137 (11th Cir. 2007) (citation omitted). Moreover, since false arrest is a species of false imprisonment, *see Wallace v. Kato,* 549 U.S. 384, 388 & 389, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter. . . . We shall thus refer to the two torts together as false imprisonment."), any finding by the undersigned directed to plaintiff's claim of false arrest is also directed to his false imprisonment claim.

[14]    In truth, it appears to the undersigned, based on the facts alleged in the complaint, that McCarthy and Matthews had probable cause to arrest plaintiff for failing to obey the order to exit his vehicle, which constitutes an absolute bar to plaintiff's § 1983 action for false arrest, search, and imprisonment. *Compare Case v, Eslinger,* 555 F.3d 1317, 1326-1327 (11th Cir. 2009) ("A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim, but the existence of probable cause at the time of arrest . . . constitutes an absolute bar to a section 1983 action for false arrest." (internal quotation (Continued)

viewed, plaintiff's allegations do not begin to suggest (factually as opposed to conclusorily[15]) that McCarthy and Matthews lacked arguable probable cause to arrest him as Davis specifically avers that he had no identification on his person or in his automobile and that he initially rebuked McCarthy's order for him to get out of his vehicle by saying, "For what?" Plaintiff's admitted recalcitrance in this regard prompted the officers to take actions to "assist" plaintiff's exit from his vehicle and then performed a search of his person while concomitantly cuffing him.  Since one of the reasons Davis was arrested on the night of June 14, 2014 is because of his failure to obey an order, and in accordance with Alabama law an officer may arrest a person without a warrant if an offense is committed in the officer's presence, ALA.R.CRIM.P. 4.1(a)(1)(ii), McCarthy and Matthews are entitled to qualified immunity as to plaintiff's claims

---

marks and brackets omitted)) *with Wood v. Kesler,* 323 F.3d 872, 878 (11th Cir.) ("'For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances.' . . . 'This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances, shown, that the suspect has committed, is committing, or is about to commit an offense.'"), *cert. denied,* 540 U.S. 879, 124 S.Ct. 298, 157 L.Ed.2d 143 (2003). Indeed, the existence of probable cause is bolstered by Davis' guilty plea to the charges of failure to obey an order, resisting arrest, and disorderly conduct. *See, e.g., Corrigan v. Kron,* 2013 WL 6478335, *6 (E.D. Wash. Dec. 10, 2013) ("Further bolstering the Court's finding of probable cause is Corrigan's ultimate conviction of the crime for which he was arrested: failure to stop for a police officer."). Nevertheless, even if McCarthy and Matthews did not have sufficient probable cause to arrest Davis on June 14, 2014, it is clear to the undersigned that arguable probable cause for an arrest existed and that the arresting officers are, therefore, entitled to dismissal of these claims on the basis of qualified immunity. *See Brown v. Ridgway,* 845 F.Supp.2d 1273, 1278 (M.D. Fla. 2012) ("[E]ven if Brazeau and McNeil did not have sufficient probable cause to arrest Plaintiff, a finding not made by this Court, the standard to be applied is whether 'reasonable officers in the same circumstances and possessing the same knowledge as the defendants *could* have believed that probable cause existed to arrest.'" (emphasis in original)).

[15]         "More than mere conclusory notice pleading is required. A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. . . . Unsupported conclusions of law or mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Gonzalez, supra,* 325 F.3d at 1235 (internal quotation marks, ellipses, brackets and citations omitted).

related to his arrest, search and imprisonment, *see Brown v. City of Huntsville, Alabama,* 608 F.3d 724, 735 (11th Cir. 2010) ("If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply.");[16] plaintiff's factual allegations do not establish that his Fourth Amendment rights were violated since there was arguable probable cause for his arrest for failure to obey an order, *compare, e.g., Christman, supra,* 296 Fed.Appx. at 787 (there is no Fourth Amendment violation where arguable probable cause exists for the arrest) *with Case, supra,* 555 F.3d at 1330 (§ 1983 false imprisonment claim fails where arrest is supported by probable cause).[17] Stated somewhat differently, based on the allegations of the complaint (as set forth in the original and proposed amended complaint), reasonable officers in the same circumstances and possessing the same knowledge as McCarthy and Matthews (that is, that plaintiff did not exit his vehicle when ordered but, instead, defied the order, and had nothing in the way of identification on his person or in his car) could have believed that probable cause existed to arrest plaintiff. *See Lee v. Ferraro,* 284 F.3d 1188, 1195 (11th

---

[16]     Moreover, the search of Davis' person by Matthews and McCarthy does not give rise to a Fourth Amendment violation inasmuch as the "search-incident-to-arrest" doctrine allows "a police officer who makes a lawful arrest [to] conduct a warrantless search of the arrestee's person and the area 'within his immediate control.'" *Davis v. United States,* 131 S.Ct. 2419, 2424, 180 L.Ed.2d 285 (2011) (citation omitted); *see also Maryland v. King,* 133 S.Ct. 1958, 1970-1971, 186 L.Ed.2d 1 (2013) ("'The validity of the search of a person incident to a lawful arrest has been regarded as settled from its first enunciation, and has remained virtually unchallenged.' . . . Even in that context, the Court has been clear that individual suspicion is not necessary, because '[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search.'").

[17]     Plaintiff explicitly admits in his complaint that he was given an order by one of the officers to exit his vehicle and his other allegations admit of the fact that he did not comply with that order, prompting the officers to "aid" him in such compliance; therefore, the officers clearly had arguable probable cause to arrest Davis for failure to obey an order. *Cf. Skop, supra,* 485 F.3d at 1141 ("[D]etermining whether Brown actually ever gave the order, and, if he did, whether he had reason to believe that Skop heard it is, on this highly disputed factual record, exactly the sort of factual, credibility-sensitive task best left to the jury.")

Cir. 2002) (defining arguable probable cause).  Accordingly, Matthews and McCarthy are entitled to dismissal of plaintiff's false/unlawful arrest/seizure, search, and imprisonment claims[18] on the basis of qualified immunity.[19]

---

[18]     Because McCarthy and Matthews had arguable probable cause to arrest Davis, Davis' claim that the officers should have afforded him an immediate probable cause hearing is unavailing. While there can be no doubt that "the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest[,]" *County of Riverside v. McLaughlin*, 500 U.S. 44, 47, 111 S.Ct. 1661, 1665, 114 L.Ed.2d 49 (1991), citing *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court made clear in *McLaughlin* that prompt does not mean *immediate*, 500 U.S. at 54, 111 S.Ct. at 1669 (emphasis supplied), and, more specifically, "the Fourth Amendment does not compel an immediate determination of probable cause upon completing the administrative steps incident to arrest." *Id.* at 53-54, 111 S.Ct. at 1668; *see also id.* at 54, 111 S.Ct. at 1668 ("[I]f a probable cause hearing is constitutionally compelled the moment a suspect is finished being 'booked,' there is no room whatsoever for 'flexibility and experimentation by the States.'" (citation omitted)). The Supreme Court specifically held in *McLaughlin* that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id.* at 56, 111 S.C.t. at 1670. The 48-hour rule recognized in *McLaughlin* was adopted by Alabama, *compare Hardeman v. State,* 651 So.2d 59, 68 (Ala.Crim.App. 1994) (noting that the 48-hour rule set forth in Rule 4.3(a)(1)(iii) of the Alabama Rules of Criminal Procedure "originated in *County of Riverside v. McLaughlin*[.]") *with* ALA.R.CRIM.P. 4.3(a)(1)(iii) ("A person arrested without a warrant . . . [s]hall be afforded an opportunity to make bail in accordance with Rules 4.3(b)(3) and 4.4. . . . If a probable cause determination is not made by a judge or magistrate without undue delay, and in no event later than forty-eight (48) hours after arrest, then, unless the offense for which the person was arrested is not a bailable offense, the person shall be released upon execution of an appearance bond in the amount of the minimum bond set in Rule 7.2 . . . ."), and in this case the evidence clearly establishes that Davis appeared before a municipal judge within forty-eight (48) hours of his arrest, in accordance with Alabama law, pled guilty to all charges which informed his arrest, and was released. Thus, plaintiff's suggestion that McCarthy and Matthews violated his Fourth, Fifth and Fourteenth Amendment rights by failing to provide him with an immediate probable cause hearing between 9:00 p.m. and 10:00 p.m. on June 14, 2014, fails to state a claim because *McLaughlin* establishes that an individual in plaintiff's shoes is not constitutionally entitled to an *immediate* probable cause hearing, only a prompt probable cause hearing. As aforesaid, plaintiff was promptly taken before a municipal judge on June 16, 2014, less than 48 hours after his arrest by Matthews and McCarthy, and at that time pled guilty to the charges of failing to obey an order, disorderly conduct, and resisting arrest. Because the failure of McCarthy and Matthews to immediately take Davis to a municipal judge or magistrate for a probable cause hearing on the night of June 14, 2014 (before he was booked, plaintiff's complaint containing no allegations that he requested the officers to take him to a magistrate or municipal judge following booking procedures) violated no clearly established constitutional rights of plaintiff, the officers are entitled to qualified immunity and dismissal of plaintiff's Fourth, "Fifth," and "Fourteenth" Amendment claims in this regard.

[19]     The arresting officers, Sgt. Jones, and the City of Mobile are entitled to dismissal of any claim by Davis directed to the alleged failure of McCarthy and Matthews to read plaintiff his *Miranda* warnings inasmuch as failure to give *Miranda* warnings is not a proper basis for (Continued)

Even if McCarthy and Matthews lacked arguable probable to arrest, search and imprison Davis, plaintiff's Fourth Amendment claim(s) in this regard are still due to be dismissed in accordance with *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck v. Humphrey,* the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 486-487, 114 S.Ct. at 2372-2373 (emphasis in original; footnotes omitted). Here, the undersigned takes judicial notice of the fact that Davis was convicted in Mobile Municipal Court on charges of failing to obey a police order, resisting arrest, and disorderly conduct and, further, Davis has made no showing that those convictions have been reversed on direct appeal or, otherwise, declared invalid or called into question. Focusing, in particular, on plaintiff's conviction for failing to obey a police order, the undersigned recommends that this Court find, consistent with other federal

---

recovery of money damages under § 1983. *See Jones v. Cannon,* 174 F.3d 1271, 1291 (11th Cir. 1999) ("We agree with the Third, Seventh, Eighth, and Tenth Circuits that failing to follow *Miranda* procedures triggers the prophylactic protection of the exclusion of evidence, but does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created.").

courts, that a plaintiff who pleads guilty to failing to obey the lawful order of a police

officer cannot state a cognizable § 1983 claim challenging the lawfulness of his arrest (or

imprisonment) inasmuch as the finding of a Fourth Amendment violation concerning

the plaintiff's arrest (and imprisonment) would necessarily imply the invalidity of his

conviction, a conviction which has not been reversed, invalidated, or expunged. *See, e.g.,*

*Martin v. Girard,* 215 F.3d 1327, 2000 WL 658326, *2 (6th Cir. May 12, 2000) (unpublished

opinion) ("Because the Martins pleaded guilty to charges of failure to obey a lawful

order of a traffic control officer, the portion of their Fourth Amendment claim

concerning the lawfulness of their arrests is not cognizable under the rule of *Heck v.*

*Humphrey,* 512 U.S. 477 (1994). A finding of a Fourth Amendment violation concerning

the Martins' arrests would necessarily imply the invalidity of their convictions; thus,

their unlawful arrest claims are not cognizable under § 1983 because their convictions

have not been reversed, expunged, or invalidated by any court."); *Mendez v. City of*

*Scottsdale, Arizona,* 2012 WL 3870364, *5 (D. Ariz. Sept. 6, 2012) ("As Plaintiff concedes in

his Response, however, his conviction precludes him from bringing a Fourth

Amendment claim for wrongful arrest or imprisonment." [] Any judgment that Plaintiff

was wrongfully arrested or imprisoned would necessarily imply that his conviction for

failure to obey a police officer was invalid."); *Hastings v. Hubbard,* 2006 WL 1705202, *9

(S.D. Ohio Jun. 16, 2006) ("In the instant case, the success of Mr. Hastings' Fourth

Amendment challenges to his seizure and arrest would necessarily implicate the

validity of his conviction [of failure to comply with the order of a police officer].

Consequently, his Fourth Amendment challenges to his seizure and arrest are not

cognizable in the instant case."); *cf. Vickers v. Donahue,* 137 Fed.Appx. 285, 2005 WL

1519353, *5 (11th Cir. Jun. 28, 2005) ("[W]hile Vickers's understanding of the law is

correct—a § 1983 claim of improper arrest does not inevitably undermine the

conviction—the factual basis for Vickers's claim does inevitably undermine his conviction. Therefore, we conclude that the district court properly found that *Heck* bars Vickers's claims [for malicious and false arrest.]"). Again, in this case, it is clear to the undersigned that plaintiff's Fourth Amendment challenges to his arrest and imprisonment would necessarily implicate the validity of his conviction for failure to obey the order of a police officer (as, in truth, it would with respect to his convictions for resisting arrest and disorderly conduct); therefore, his Fourth Amendment challenges to his seizure/arrest and imprisonment are not cognizable pursuant to § 1983.[20]

**Excessive Force**. Plaintiff alleges that McCarthy and Matthews used excessive force in effectuating his arrest. It is clear that "'[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest.'" *Myers v. Bowman,* 713 F.3d 1319, 1327 (11th Cir. 2013), quoting *Lee v. Ferraro,* 284 F.3d 1188, 1197 (11th Cir. 2002). The Eleventh Circuit has also long held and explained that "when applied in excessive force cases, 'qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [the position of the defendant officer] to conclude the force was unlawful.'" *Nolin v. Isbell,* 207 F.3d 1253, 1255 (11th Cir. 2000), quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993), *modified on other grounds,* 14 F.3d 583 (11th Cir. 1994).

---

[20]     In addition, the undersigned fails to perceive how plaintiff has a cognizable claim for unlawful search since the search of Davis' person was conducted incident to his arrest and plaintiff makes no allegation that anything seized from his person was not returned to him or, otherwise, was utilized against him in court.

Here, based on the facts set forth in plaintiff's complaint (as plaintiff purports to amend it), McCarthy and Matthews "coerced" Davis from his automobile by McCarthy's act in placing his hand on his gun and shouting at him to get out of the car (because he was going to jail) and the act of Matthews in pulling on plaintiff's left shoulder; the officers then began to search his person while concomitantly placing him in handcuffs. Plaintiff nowhere describes any injuries to his person (for instance, his shoulder)[21] attributable to the actions of McCarthy and Matthews and certainly makes no allegations that he required medical treatment following his arrest. (*See* Docs. 1 & Doc. 24, Exhibit 2.) Given that the amount of force utilized by McCarthy and Matthews was minor in nature and the injury inflicted, if any, *de minimis*, the undersigned recommends that the Court find that plaintiff's excessive force claim against McCarthy and Matthews be **DISMISSED** inasmuch as the application of the excessive force standard would not inevitably (or invariably) lead an official in the position of the arresting officers in this case to conclude that the force utilized was unlawful, *see Nolin, supra,* at 1256, particularly in light of the Supreme Court's recognition that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-1872, 104 L.Ed.2d 443 (1989) (citation omitted).

---

[21]     As for plaintiff's allegations that the officers touched his buttocks and groin area during the search, such conduct is inevitable during a pat-down search and, as with the touching of the shoulder, plaintiff makes no suggestion or allegation that he suffered any injury to his buttocks or groin during the course of his arrest. The same conclusion herein pertains even considering the affidavit observations of Jawanna Osborne that she "observed two police officers snatch [Davis] from inside [his] car in a very aggressive manner, slam . . . [him up] against [hi] car, put hand cuffs on [him] & search [him]." (Doc. 1, Affidavit of Jawanna Osborne, at ¶ 3; *see also* Doc. 24, Exhibit 2, Osborne aff.)

D.   __Claim Asserted Against Defendant Jones.__   The undersigned does not
again go over the specifics of qualified immunity; instead, the undersigned simply
notes that there can be no doubt but that Jones was acting within the scope of his
discretionary authority in arriving on the scene on June 14, 2014, following the arresting
officers initial stop of Davis' vehicle. The "relevant inquiry becomes whether the facts
[Davis] alleged show that [Jones's] conduct violated [Davis's] 'clearly established'
constitutional rights[,]" with, of course, the "critical inquiry in determining whether law
is 'clearly established' [being] whether the defendant had 'fair warning' that his conduct
was unlawful." *Williams v. Santana*, 340 Fed.Appx. 614, 617 (11th Cir. Aug. 11, 2009)
(citation omitted).

It has been clearly established that "'supervisors can be held liable for
subordinates' constitutional violations on the basis of supervisory liability under 42
U.S.C. § 1983.'" *Id.* (citation and brackets omitted).

> Supervisory liability under § 1983 occurs when the supervisor personally
> participates in the alleged constitutional violation or when there is a
> causal connection between the actions of the supervising official and the
> alleged constitutional deprivation.[22] . . .
>
>        A causal connection may be established when: 1) a "history of
> widespread abuse" puts the responsible supervisor on notice of the need
> to correct the alleged deprivation, and he or she fails to do so; 2) a
> supervisor's custom or policy results in deliberate indifference to
> constitutional rights; or 3) facts support an inference that the supervisor
> directed subordinates to act unlawfully or knew that subordinates would
> act unlawfully and failed to stop them from doing so.

*Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (some internal quotation marks
omitted; citations omitted; footnote added), *cert. denied,* 552 U.S. 1095, 128 S.Ct. 865, 169

---

[22]       In other words, the supervisor's conduct must be "causally related to the
constitutional violation committed by his subordinate[.]" *Greason v. Kemp,* 891 F.2d 829, 836
(11th Cir. 1990).

L.Ed.2d 723 (2008); *see also A.P. ex rel. Bazerman v. Feaver,* 293 Fed.Appx. 635, 651 n. 60 (11th Cir. Aug. 21, 2008) (same); *cf. Roy v. Johnson,* 97 F.Supp.2d 1102, 1112 (S.D. Ala. 2000) ("In order to state a § 1983 claim against a supervisor for failure to supervise, a plaintiff 'must present some evidence that the [defendant] knew of a need to train and/or supervise in a particular area and the defendant made a deliberate choice not to take any action[,]' that this failure to train and/or supervise constitutes a custom or policy, and that the failure to train and/or supervise was the moving force behind the deprivation of a constitutional right."). As reiterated by the Eleventh Circuit in *Williams, supra,* "'[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'" 340 Fed.Appx. at 617, quoting *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990).

Davis nowhere alleges in his complaint that Jones personally participated in the violations (that is, unlawful arrest/seizure, search, imprisonment and excessive force) and, therefore, the sole question becomes whether the complaint (as plaintiff desires to amend it) sufficiently alleges a causal connection between Jones's failure to act and the alleged violations. Beyond stating the obvious that the recommendation that McCarthy and Matthews are entitled to qualified immunity establishes Jones's entitlement to qualified immunity, the undersigned would recommend dismissal of the claim against Jones even if dismissal of the claims against McCarthy and Matthews is inappropriate. This is because: (1) Davis does not set forth in his complaint (as he proposes to amend it) any prior incidents involving use of force by McCarthy and/or Matthews or any prior incidents where McCarthy and/or Matthews were determined to have falsely arrested, searched and imprisoned individuals without probable cause or a probable cause hearing sufficient to put Jones "on notice of misconduct that was sufficiently

'obvious, flagrant, rampant and of continued duration' to require him to act[,]"
*Williams, supra,* 340 Fed.Appx. at 618; (2) Davis makes no allegations that Jones knew of
a need to train and/or supervise McCarthy and Matthews with respect to use of force
and probable cause sufficient to arrest, search and imprison someone and that Jones
made a deliberate choice not to take any action, that such failure to train and/or
supervise constitutes a custom or policy, and that the failure to train and/or supervise
was the moving force behind the deprivation of a constitutional right, *see Roy, supra,* 97
F.Supp.2d at 1112; and (3) Davis sets forth no facts from which this Court can infer that
Jones directed McCarthy and Matthews to act in an unlawful manner or facts from
which this Court could infer that Jones knew McCarthy and Matthews would act
unlawfully and failed to stop them from so acting, *see Williams, supra,* 340 Fed.Appx. at
617. Indeed, the only non-conclusory "facts" Davis makes relative to Jones are that
Jones arrived on scene after the initial stop of his vehicle and observed his arrest, etc.,
and that Jones told him, "When an officer tells you to get out of the car, you get out!"
(*See, e.g.,* Doc. 24, Exhibit 1, at ¶ 23 & Affidavit of Isaac Davis in Support of Complaint,
at ¶ 23.)[23] Jones's comment to Davis constitutes nothing more or less than sage advice; it
certainly does not constitute "facts" upon which to predicate supervisory liability under
§ 1983. In other words, Davis has not alleged the necessary causal connection to hold
Jones liable in his supervisory capacity and, therefore, Jones is entitled to qualified
immunity and the granting of his motion to dismiss (Doc. 13).

---

[23]     Otherwise, plaintiff only alleges in conclusory manner that "Jones knew or
should have known with respect to his duties, his subordinates McCarthy & Matthews
searched, arrested & imprisoned plaintiff absent warrant, probable cause, his consent & exigent
circumstances[]" and that "Jones knew or should have known that his condonation (sic) of
objectively unreasonable use of force of his subordinates against plaintiff was objectively
unreasonable." (*See, e.g.,* Doc. 24, Exhibit 2, at 47 & 48.)

E.   __City of Mobile's Liability Under § 1983__.  "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004); *see Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) ("As our § 1983 municipal liability jurisprudence illustrates . . ., it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."). As best the undersigned can parse plaintiff's complaint, he alleges the following theories for municipal liability under § 1983: (1) the City of Mobile maintained a policy or custom and/or failed to train and supervise its police officers regarding search and seizure procedures and probable cause hearings; (2) the City of Mobile maintained a policy or custom and/or failed to train and supervise its police officers regarding use of force attendant to making an arrest; and (3) the City of Mobile ratified the officers' actions in this matter by not taking any action against the officers despite its receipt of three notices over a ninety-day period of the subject incident and the officers' "misconduct." (*See, e.g.,* Doc. 24, Exhibit 2, at ¶¶ 36-40 & 58.)

As reflected above, Davis' complaint does not establish any constitutional violation, that is, no violation of his Fourth, Fifth, or Fourteenth Amendment rights,[24] and, therefore, there is simply no basis upon which to predicate municipal liability. *See McDowell, supra,* 392 F.3d at 1289 (the first requirement for imposing § 1983 liability on a municipality is a showing by plaintiff that his constitutional rights were violated). This is particularly true with respect to Davis's baseless and unsupportable allegations that McCarthy and Matthews were constitutionally required to ensure that he be *immediately* taken before a magistrate or municipal judge for a probable cause hearing following his arrest late on the night of June 14, 2014 (that is, before "booking"), *see McLaughlin, supra,* at 54-56, 111 S.Ct. at 1668-1670 (recognizing that individuals arrested without a warrant are entitled to a prompt probable cause hearing, not an immediate probable cause hearing upon completion of the administrative steps—booking, etc.—attendant to arrest, and that a jurisdiction providing judicial determinations of probable cause within 48 hours will generally comply with the promptness requirement of *Gerstein*),[25] and his Fourth Amendment excessive use of force claim, since his allegations in this regard do not state a claim because of their *de minimis* nature, *see Higgenbotham v. City of Pleasant Grove,* 2013 WL 5519577, *20 (N.D. Ala. Sept. 30, 2013) (dismissing excessive

---

[24]    The undersigned parenthetically notes that while plaintiff claims that McCarty and Matthews deprived him of his Fifth and Fourteenth Amendment rights by denying him an immediate probable cause hearing (*see, e.g.,* Doc. 24, Exhibit 2, at ¶ 57), this claim in truth is a Fourth Amendment claim, *cf. McLaughlin, supra,* at 47, 111 S.Ct. at 1665 (recognizing that "the Fourth Amendment requires a prompt determination of probable cause").

[25]    As previously referenced, plaintiff alleges no facts from which this Court can infer that he requested/demanded to be taken to a magistrate or municipal judge after he was booked into the Mobile Metro Jail. The facts alleged by plaintiff (that McCarthy and Matthews took him by the magistrate's officer, told him they were there, and then "laughed-off" his request for a probable cause hearing) all occurred late at night on the evening of June 14, 2014— when no magistrate could be on duty—before any booking or other administrative steps incident to arrest.

force claim where "[t]he use of force alleged—grabbing Higginbotham's arm, slamming him against the van, twisting his arms behind his back and handcuffing him in a way that caused pain, and dragging him to the rear of his car—is commensurate with the uses of force characterized as *de minimis* by the Eleventh Circuit[.]").[26] And although it is also true with respect to his Fourth Amendment claims regarding his purported unlawful arrest/seizure, search and imprisonment—given that McCarthy and Matthews had probable cause or at least arguable probable cause to arrest plaintiff for failing to obey an order—the undersigned finds it appropriate to discuss at some additional length why there is no municipal liability under § 1983 properly alleged in the complaint respecting the search and seizure procedures utilized by the City's police officers.

The allegations in the complaint, as plaintiff purports to amend it, related to search and seizure procedures, and the City's purported ratification of the officers' unlawful conduct in this regard, are the following: (1) the "Plaintiff via certified mail of **three (3)** actual notices over a **ninety (90)** day period has notified City of the incident & its officers' misconduct[;]" (2) the "City has not responded to any of the said notices & City's officers were still on duty prior to plaintiff commencing this suit[;]" (3) the "City as a matter of policy or custom failed to properly train, supervise, control, correct the abuse & discourage the unlawful use of authority of its officers[;]" (4) the "Plaintiff had a reasonable expectation that upon notifying City via certified mail, City would

---

[26]    The undersigned nevertheless agrees with counsel for the City of Mobile that plaintiff's conclusory statements of the elements of municipal liability—as it relates to his "use of force" and his "probable cause" claims—are devoid of specific factual allegations necessary to establish municipal liability based on alleged Fourth, Fifth and Fourteenth Amendment violations by the officers and, therefore, these claims against the City are due to be **DISMISSED**.

investigate this matter[;]" (5) the City failed "to properly train, supervise, control, correct & discourage the unlawful use of authority of its officers, ratifying unlawful conduct of its officers, & exhibiting deliberate indifference to Plaintiff's reasonable expectations of the Federal Constitution[;]" and (6) despite the City's awareness of its "failure to properly train, supervise, control, correct & discourage the unlawful use of authority of its officers, [the] City continuously exhibits deliberate indifference to its duties, law, & plaintiff's reasonable expectations of City whereby ratifying its officers' objectively unreasonable actions against plaintiff & exhibiting a **we don't give a damn about your rights** policy or custom . . ., which is deliberately indifferent to the reasonable expectations of its citizens who its officers come into contact with & was the moving force behind **ALL** of plaintiff's injuries." (*See* Doc. 24, Exhibit 2, at ¶¶ 36-37, 39, 51 & 58.)

　　　To the extent that the foregoing allegations can be read to implicate a custom of policy of the City resulting in a violation of his Fourth Amendment rights, those allegations are wholly conclusory and relate solely to the incident which is the subject of the complaint, plaintiff nowhere alleging any specific facts indicating a persistent or widespread policy or custom followed by the City with respect to arrest/seizure, imprisonment and search practices.[27] Accordingly, because plaintiff's factual allegations focus solely on his arrest, search, and imprisonment, they are legally insufficient to state a claim of municipal liability against the City. *See Barr v. Gee,* 437 Fed.Appx. 865, 875 (11th Cir. Aug. 16, 2011) ("As employees' actions do not imply municipal liability absent an official policy or custom, and a single incident does not support an inference

---

[27]　　　In other words, Davis offers no factual allegations to support a plausible inference that the City had a custom of condoning violations of arrestees' search, seizure, and imprisonment rights.

of such a policy, the district court did not err in finding that Barr had failed to state a claim for municipal liability."), *cert. denied,* ___ U.S. ___, 132 S.Ct. 2392, 182 L.Ed.2d 1035 (2012); *see also id.* at 874 ("An 'isolated incident, however unfortunate, does not demonstrate evidence of the County's 'persistent' or 'widespread' policy.").

With respect to plaintiff's broad allegations of inadequate training and supervision, it is clear that "'[m]unicipal policy or custom may include a failure to provide adequate training if the deficiency evidences a deliberate indifference to the rights of its inhabitants.'" *Barr, supra,* 437 Fed.Appx. at 874, quoting *Lewis v. City of West Palm Beach, Florida,* 561 F.3d 1288, 1293 (11th Cir. 2009).

> In order to establish deliberate indifference, the "plaintiff must present some evidence that the municipality knew of a need to ***train and/or supervise*** in a particular area and the municipality made a deliberate choice not to take any action." A municipality may be put on notice if either (1) the municipality is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, or (2) the likelihood for a constitutional violation is so high that the need for training would be obvious.

*Id.* (emphasis supplied; internal citations omitted). Here, of course, plaintiff nowhere alleges in his complaint, as he purports to amend it, facts supporting a plausible inference either that the City was on notice before June 14, 2014 of a need to train or supervise its police officers in the area of searches, seizures, and imprisonment, or that the City made a deliberate choice not to take any action in this regard. Thus, plaintiff also has failed to state a cognizable claim of "failure to train/supervise" municipal liability.

Finally, the undersigned agrees with the City that Davis' allegations of municipal liability based on ratification are legally insufficient to state a claim.

> [I]n limited circumstances, a city also may be held liable on a ratification theory. Support for ratification as a theory of § 1983 municipal liability emanates from dicta in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion), that, "[i]f the authorized

> policy makers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* at 127, 108 S.Ct. 915. The Eleventh Circuit has explained that § 1983 municipal liability on the basis of ratification occurs "when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia County,* 294 F.3d 1294, 1297 (11th Cir. 2002). "The final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it." *Id.*

*Waters v. City of Geneva,* 47 F.Supp.3d 1324, 1336 (M.D. Ala. 2014). There are simply no allegations in the complaint, as plaintiff proposes to amend it, that McCarthy and Matthews requested and obtained approval from an authorized municipal policymaker to seize/arrest, search and imprison plaintiff on *June 14, 2014*; therefore, there are no plausible allegations that the City of Mobile is liable under § 1983 based upon a ratification theory. *See id.* at 1337. Plaintiff's allegations that he informed the City of the incident and the officers' misconduct after the fact and the City failed to respond to his notices does not amount to ratification. *See id.* In addition, the suggestion that the City did nothing to punish these officers does not establish a basis for municipal liability because of a lack of a direct causal link between the purported municipal action (or non-action) and the alleged deprivation of plaintiff's constitutional rights. *See Hardy v. Town of Hayneville,* 50 F.Supp.2d 1176, 1188 (M.D. Ala. 1999) ("The town council made the decision to retain Officer Davis after the incident which gave rise to Plaintiff's alleged constitutional injuries. Therefore, there is no direct causal link between the council's decision to retain Officer Davis and the deprivation of Plaintiff's federal rights. The town council's decision to retain Officer Davis does not give rise to liability for the constitutional deprivation alleged in this case.").

Based upon the foregoing, all § 1983 municipal liability claims asserted by Davis are due to be **DISMISSED**.

F.   <u>**Plaintiff's State Law Claims**</u>. Davis has alleged a variety of state law claims against the arresting officers, McCarthy and Matthews, including claims of trespass, assault and battery, false arrest, and false imprisonment. (*Compare* Doc. 1, at ¶ 40 *with* Doc. 24, Exhibit 2, at ¶ 55.)  In light of the proper dismissal of plaintiff's federal claims, there exists no independent basis for federal jurisdiction; therefore, the state law claims that remain also should be dismissed so that Davis may pursue them in state court. *See Nolin, supra,* 207 F.3d at 1258. As established by the briefing in this matter (*see, e.g.,* Doc. 18, at 12-13), plaintiff's state law claims "deal with complex questions of discretionary immunity in the state of Alabama[, and a] proper resolution of th[os]e [] state law causes of action will require a careful analysis of Alabama law—something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake in this sensitive area." *Id.* In light of the foregoing, the undersigned **RECOMMENDS** that the Court **DISMISS** plaintiff's state law claims—asserted against McCarthy and Matthews—so that Davis may pursue those claims, if he so chooses, in state court.

<u>CONCLUSION</u>

In light of the foregoing, the undersigned **RECOMMENDS** that the Court **GRANT** the motions to dismiss filed on behalf of the City of Mobile (Doc. 19) and Sergeant Melvin Jones (Doc. 13) **IN THEIR ENTIRETY.** In addition, the motion to dismiss filed on behalf of Officer Daniel McCarthy and Corporal Lorenzo Matthews (Doc. 17) should also be **GRANTED**. The undersigned would simply note that the state claims asserted against McCarthy and Matthews should be dismissed in a manner that Davis may pursue those claims, if he so chooses, in state court.

<u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 26th day of August, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**